1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

HAROLD EDWARDS,                    )
                                   )
                Plaintiff,         )        Case No.: 2:20-cv-01634-GMN-BNW
                                   )
        vs.                        )
                                   )        **ORDER**
WILLIAM HUTCHINGS, *et al.*,       )
                                   )
                Defendant.         )
                                   )
_____   )

        Pending before the Court is Defendants Charles Daniels and William Hutchings (collectively "Defendants'") Motion for Summary Judgment, (ECF No. 42). Plaintiff Harold Edwards ("Plaintiff") filed a Response, (ECF No. 56), to which Defendants filed a Reply, (ECF No. 62). Plaintiff then filed without Leave, a Sur-Reply, (ECF No. 62), to Defendants Reply.

        Also pending before the Court is Defendants' Motion to Strike, (ECF No. 64).

        For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Summary Judgment and Motion to Strike.[1]

## I.    BACKGROUND

        This case arises out of Defendants' alleged indifference to Plaintiff's conditions of confinement.[2] (*See* Compl., ECF No. 6). According to Plaintiff, who is currently in custody at

---

[1] Under Local Rule 7-2(d), "[t]he failure of an opposing party to file points and authorities in response to any motion, exception a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion." Plaintiff has not filed a response to Defendants' Motion to Strike. Accordingly, pursuant to this District's Local Rule 7-2(d), Defendants' Motion to Strike Plaintiff's Reply, (ECF No. 62), is granted.

[2] William Hutchings serves as the Warden ("Warden Hutchings") at Southern Desert Correction Center ("SDCC"). (Hutchings Decl. ¶ 1, Ex. A to Errata Mot. Summ. J., ECF No. 43-1). Charles Daniels serves as a Director ("Director Daniels") at SDCC. (Daniels Decl. ¶ 1, Ex. F to Mot. Summ. J., ECF No. 42-6); (Mot. Summ. J. 2:1–4, ECF No. 42).

1   Southern Desert Correctional Center ("SDCC"), Defendants are aware (because of the multiple
2   grievances he has filed), that his cell does not have fire sprinklers or smoke detectors. (*Id*. at 3).
3   Plaintiff further alleges that without these safety mechanisms, he could suffer severe burns or
4   death if there was a fire at the facility. (*Id*. at 4).  Plaintiff's prior grievances have been denied.
5   (*Id*. at 5).  Prison officials have told Plaintiff that the prison was built prior to building codes
6   requiring sprinklers, and that the current building codes does not require that sprinklers be
7   installed until the next remodeling or addition to the building. (*Id*. at 6).

8        Plaintiff filed the instant action on September 3, 2020, asserting that pursuant to 42
9   U.S.C. § 1983, Defendants deliberate indifference to his conditions of confinement violated his
10  Eighth Amendment rights. (*See generally* Compl.).  On June 8, 2022, Defendants filed the
11  instant Motion for Summary Judgment. (Mot. Summ. J. ("MSJ"), ECF No. 42).

## II.   <u>LEGAL STANDARD</u>

13       The Federal Rules of Civil Procedure provide for summary adjudication when the
14  pleadings, depositions, answers to interrogatories, and admissions on file, together with the
15  affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant
16  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that
17  may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248
18  (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on
19  which a reasonable fact-finder could rely to find for the nonmoving party. *See id.*  "The amount
20  of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or
21  judge to resolve the parties' differing versions of the truth at trial.'"  *Aydin Corp. v. Loral
22  Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co*., 391 U.S.
23  253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all
24  inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's
25  favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United*

*States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible

discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.  When a litigant is *pro se*, "we must consider as evidence in his opposition to summary judgment all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [he[ attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## III.   <u>DISCUSSION</u>

Defendants argue that they are entitled to summary judgment because Plaintiff cannot show that they were deliberately indifferent to a serious threat to Plaintiff's safety. (MSJ 6:9–7:26).  Defendants further contend that Plaintiff failed to present evidence which shows that Defendants personally participated or were even aware of any alleged constitutional violation.

(*Id*. 8:1–13).   Plaintiff, in rebuttal, asserts that the inadequate fire safety system at SDCC poses an unreasonable threat of fire, and that Defendants were aware of this threat. (Resp. 7:24–16:24).

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment[,] but also from inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006), *as amended on denial of reh'g* (Nov. 30, 2006).  A prisoner bringing an Eighth Amendment conditions of confinement claim "must show (1) that the deprivation he suffered was objectively, sufficiently serious; and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place." *Id*. (internal quotation marks omitted).  While "the routine discomfort inherent in the prison setting" is not enough to satisfy the first prong, "those deprivations denying the minimal civilized measures of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety," and the "circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." *Id.*

The Court will first examine whether SDCC's allegedly inadequate fire system constitutes an unconstitutional condition of confinement.

**A. Fire Safety System**

As stated, Defendants maintain that SDCC's fire safety system does not place Plaintiff in an imminent risk of harm. (MSJ 6:9–20).  In rebuttal, Plaintiff contends that SDCC's fire safety system violates his Eighth Amendment rights because SDCC does not have fire sprinklers in every cell and that the call button in his cell is inoperative. (Resp. 2:15–20, 11:6–

1  15).  Without such measures, Plaintiff maintains he would be left helpless in the event of a fire.
2  (*Id.*).

3        The Eighth Amendment requires that prison officials provide adequate fire safety to
4  inmates. *See Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985) ("Prisoners have the right
5  not to be subjected to the unreasonable threat of injury or death by fire and need not wait until
6  actual causalities occur in order to obtain to obtain relief from such conditions.").  However,
7  "[w]hile fire and electrical codes can be helpful in determining whether a lack of fire safety can
8  constitute a violation of the Eighth Amendment, they are not determinative, and the Eighth
9  Amendment does not require that prisons meet fire and electrical codes." *Johnson v. Texas Bd.*
10 *of Criminal Justice*, 281 F.3d App'x 319, 322 (5th Cir. 2008); *see Masonoff v. DuBois*, 899 F.
11 Supp. 782, 799 (D. Mass. 1995) (observing that although fire safety codes do not set the
12 constitutional minima, they do provide an indication of society's evolving standard of
13 decency).  "Unless objective assessment of prison conditions compels the conclusion that
14 inmates are being subjected to unreasonable safety risks, the federal courts must avoid
15 becoming enmeshed in the minutiae of prison operations, and should decline to second-guess
16 prison administrators in the operation of correctional facilities." *Bell v. Wolfish*, 441 U.S. 520,
17 562, (1979).

18        Here, Plaintiff has failed to present evidence that fire safety measures at SDCC are
19 constitutionally inadequate.  Plaintiff is correct that SDCC does not have fire sprinklers
20 installed in every cell.  However, although the presence of sprinklers in cells may enhance
21 safety in a prison, the absence of sprinklers does not necessarily constitute an Eighth
22 Amendment violation. *See Kamara v. Admin'r, Bayside State Prison*, No. 17-cv-7383, 2018
23 WL 999670, at *2 (D.N.J. Feb. 21, 2018) ("An allegation that a prison cell lacks fire sprinklers
24 or other fire precautions without more does not violate the Eighth Amendment."); *Sowell v.*
25 *Fair*, 915 F.2d 1557, *5 (1st Cir. 1990) (writing that a prisoner's claim regarding inoperative

1   smoke detectors failed to state an Eighth Amendment claim); *Cutsinger v. Louisville Metro*

2   *Dept. of Corr.*, at *4 (W.D. Ky. July 19, 2019) ("Simply alleging that cells are unsafe 'with no

3   fire sprinkler or fire evacuation plan' is conclusory, and without more, is insufficient to state a

4   claim under the Eighth Amendment." (quoting *Deas v. Ingham Cty. Jail*, No. 1:18-cv-838,

5   2018 WL 3853521, at *4 (W.D. Mich. Aug. 14, 2018).  Moreover, Defendants have produced

6   evidence that fire sprinklers were not required under state law when Plaintiff's housing unit

7   was built and will not be required until the structure is renovated or an addition is built.[3] (MSJ

8   6:11–19).  Additionally, Defendants explain that Plaintiff has since been placed in a unit which

9   does have sprinklers installed, thereby mitigating any threat of fire. (*Id*. MSJ 6:18); (*see*

10  Hutchings Decl. ¶ 8) ("[Plaintiff] is currently housed in Unit 8.  The cells in Unit 8 have fire

11  suppression sprinklers.").

12      Furthermore, outside of SDCC's alleged failure to install sprinklers, Plaintiff does not

13  advance evidence that SDCC lacks a comprehensive fire safety plan.  To the contrary,

14  Defendants have provided evidence of SDCC's fire safety procedures.  Specifically, Warden

15  Hutchings stated that Correctional Officers at SDCC are placed on "24 hour — 7 day a week

16  rotation" which enables Officers to "provide the necessary fire watch."[4] (Hutchings Decl. ¶¶ 6–

17  ———————————

18  [3] Under the Nevada Administrative Code, buildings owned by the State of Nevada must comply with the
    building code that was in effect at the time of the building's construction, but fire sprinklers must be installed

19  during the next remodeling of or addition to the building. *See* N.A.C. 477.915(a).  Plaintiff argues that it is unjust
    that the Nevada Administrative Code exempts an institution from complying with current fire safety codes.

20  (Resp. 4:4–7).  However, "[w]hile fire and electrical codes can be helpful in determining whether a lack of fire
    safety can constitute a violation of the Eighth Amendment, they are not determinative, and the Eighth

21  Amendment does not require that prisons meet fire and electrical codes." *Johnson*, 281 Fed. App'x at 322;
    *French v. Owens*, 777 F.2d 1250, 1257 (7th Cir. 1986) (observing that "[t]he Eighth Amendment does not

22  constitutionalize the Indiana Fire Code. Nor does it require complete compliance with the numerous OSHA
    regulations" and remanding to the district court to order only those remedies that are necessary to bring

23  conditions about constitutional minima).

24  [4] In response, Plaintiff argues that these correctional officers "stay[] inside the office in the Rotunda" for most of
    their shifts, and only come out to do head count. (Resp. 8:26–9:5).  Plaintiff appears to be arguing that these

25  Correctional Officers cannot provide the necessary "fire watch" because they lack the necessary vigilance. (*Id*.
    9:1–5).  However, Plaintiff's argument is purely speculative.  Defendants have provided evidence that
    Correctional Officers equipped to identify and combat fires are constantly in Plaintiff's housing unit.

7, Ex. A to Errata Mot. Summ. J., ECF No. 43-1).  Warden Hutchings further explained that "fire extinguishers and hoses are located throughout the housing units for safety of the inmates and staff."). (*Id.* ¶ 8); *see Wilson v. Brown*, 261 Fed. App'x 442, 1 (3d Cir. 2008) (per curiam) (affirming district court's decision that plaintiff failed to show evidence supporting his allegation he was housed under conditions subjecting him to an unreasonable risk of fire where the housing unit "was not equipped with sprinklers," but the unit had "smoke detectors and fire extinguishers").

Accordingly, the Court finds that the evidence shows that the conditions of Plaintiff's confinement is not sufficiently serious to result in the denial of a civilized life's necessities under the Eighth Amendment.[5]  Even assuming that Plaintiff was exposed to an unreasonable risk of fire, however, Plaintiff has failed to show that Defendants personally participated in the alleged constitutional violation.

### B.  Personal Participation

Defendants contend that "there is no evidence to suggest that "Warden Hutchings or Director Daniels personally participated in [Plaintiff's] alleged constitutional violation." (MSJ 8:8–13).  The Court agrees.

If an inmate demonstrates an objectively substantial risk of harm, he then must demonstrate that prison officials were subjectively aware of that risk of harm and were deliberately indifferent." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).  The official must both be aware of facts form which he could infer a serious risk of harm to the inmate, and the official must actually draw that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Once the official is subjectively aware of the inmate's risk of serious harm, he is deliberately indifferent

---

[5] The Court declines to examine any dispute surrounding the operability of the call button in Plaintiff's cell in light of the analysis set forth above.

1    if he disregards that risk. *Id.*  "In essence, prison officials must have known of the plaintiff's

2    risk of suffering serious harm and disregarded that risk." *Duda v. Williams*, No. 2:16-cv-3044,

3    2019 WL 1062361, at *3 (D. Nev. Mar. 5, 2019).

4            Here, Defendants have provided evidence which shows they were unaware of the

5    alleged constitutional violation prior to Plaintiff bringing the instant suit.  Foremost, neither of

6    the Defendants were responsible for responding to Plaintiff's grievances, nor did they review

7    the internal grievances Plaintiff filed. (*See* Ex. A to MSJ, ECF No. 42-1 Grievance No.

8    20063088893); (Hutchings Decl. ¶ 11); (Daniels Decl. ¶ 6, Ex. F to Mot. Summ. J., ECF No.

9    42-6).  Moreover, Defendants explained that they were not made aware of Plaintiff's grievances

10   until the initiation of the instant action. (Hutchings Decl. ¶¶ 4, 8); (Daniels Decl. ¶¶ 4–5).

11           In response, Plaintiff advances three arguments to demonstrate that Defendants knew of

12   the alleged constitutional violation.  First, Plaintiff argues that Defendants were constructively

13   notified because he mailed a letter describing the alleged unconstitutional conditions to former

14   Warden Jerry Howell, Deputy Director Harold Wickham, and Governor Steve Sisolak. (Resp.

15   8:5–16).  However, Plaintiff does not provide any evidence that these individuals disclosed or

16   discussed the letter with Defendants.  Plaintiff cannot rely on conclusory allegations

17   unsupported by factual proof.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)

18           Second, Plaintiff argues that Warden Hutchings knew of the alleged constitutional

19   violation because he acknowledged in his Declaration that he reviewed the allegations in

20   Plaintiff's Complaint. (Resp. 9:8–12); (Hutchings Decl. ¶ 5).  However, this acknowledgement

21   does not show that Warden Hutchings retrospectively knew of the alleged constitutional

22   violation.  Instead, it shows that Warden Hutching did not have knowledge of the alleged

23   constitution violation until the Complaint was filed.[6]

24

25

---

[6] Although Plaintiff did not include Director Daniels in this argument, this reasoning applies equally to him.

1    Finally, Plaintiff argues that Director Daniels personally participated in the alleged

2  constitutional violation by virtue of his supervisory position at SDCC. (Resp. 8:11–18).

3  However, a defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal

4  participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Plaintiff

5  does not include specific factual allegations that would support that Director Daniels was

6  personally involved in the alleged violations, and Plaintiff "cannot hold [Director] Daniels

7  generally liable for every alleged violation that occurred simply because Daniels was the

8  director at [SDCC]." *Harris v. Nevada*, No. 2:20-cv-02040, 2021 WL 4397554, at *2 (D. Nev.

9  Sept. 24, 2021); *Johnson v. Nevada Dept. of Corr.*, No. 2:21-cv-00306, 2021 WL 4432477, at

10  *2 (D. Nev. Sept. 24, 2021) (finding that a plaintiff cannot sufficiently show a § 1983 claim by

11  alleging that defendants personally participated "based solely on their supervisory positions").

12  Accordingly, the Court finds that Defendants have shown that they did not personally

13  participate in any alleged constitutional violation.

14    Therefore, Defendants are entitled to summary judgment on Plaintiff's Eighth

15  Amendment Claim.

16  **IV.    CONCLUSION**

17    **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF

18  No. 42), and Motion to Strike, (ECF No. 64), is **GRANTED**.

19    **IT IS FURTHER ORDERED** that the Clerk of Court shall close the case and enter

20  judgment accordingly.

21    **DATED** this __1__ day of November, 2022.

22

23  _____

24  Gloria M. Navarro, District Judge
    UNITED STATES DISTRICT COURT

25